[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM TO COMPLY WITH THE PLAINTIFF'S REQUESTS FOR ARTICULATION WHICHREQUESTS ARE DATED MAY 7, 1997 AND MAY 14, 1997 ASKING THE COURT TOARTICULATE ITS MEMORANDUM OF DECISION DATED APRIL 29, 1997
The Court by way of articulation to Plaintiff's requests answers the questions posed in said motions as follows.
As to the motion of May 7, 1997:
Question
1. Did the court intend, and is the Defendant, Walter A. Benson, required to maintain the Plaintiff wife, Cynthia Benson, as survivor beneficiary of his pension pursuant to his testimony that she is named already?
Answer
The Defendant is not required to maintain the Plaintiff wife as survivor beneficiary of his pension.
The detailed proposed orders by the Plaintiff dated April 15, 1997 made no such request. See Proposed Order No. 5 as concerns Plaintiff's request as to the pension. The Court acknowledges that the proposed orders do not control but recalls no request being made by Plaintiff to continue as survivor beneficiary on the pension.
Question
2. Did the Court intend the Defendant, Walter A. Benson, be required to name the Plaintiff as beneficiary of his life insurance for any length of time?Answer
The Court did not intend that the Defendant, Walter A. Benson, be required to name the Plaintiff as beneficiary of any life insurance he maintained and no request to that effect was made in Plaintiff's detailed proposed orders of April 15, 1997. CT Page 5250
Question
3. Did the Court intend, and does the award of alimony to the Plaintiff, enable her to seek alimony beyond the two-year period?
Answer
The Court intended that the award of alimony be for a period of two years only.
Question
4. Did the Court intend to transfer one-half of the 401K plan to the Plaintiff immediately or to set some period of time in which the Defendant was to pay the same over to the Plaintiff?
Answer
The Court intended that the transfer to the Plaintiff of one-half of the 401K plan be effected immediately or as soon as the transfer could reasonably be effected.
Question
5. Did the Court intend to have the alimony award paid to the Plaintiff by way of wage withholding?
Answer
The Court intended that a contingent wage execution be ordered.
Question
6. Did the Court intend to require the Defendant, Walter A. Benson, to maintain health insurance if the premium amount exceeds $211.00 per month?
Answer
The Court intended to require the Defendant to be responsible for the health insurance benefits at a cost not exceeding $211.00 monthly as stated in the memorandum. If the cost exceeded $211.00 monthly, the Defendant would not be CT Page 5251 responsible for any additional amount.
The testimony indicated this was a median figure.
As to the motion of May 14, 1997:
Question
1. Concerning the finding that "the Defendant gave Plaintiff between $160.00 and $180.00 weekly," during what period of time did this occur and for what purpose was the money given?
Answer
During the course of the marriage, Defendant gave Plaintiff sums of money varying from $160.00 to $180.00 weekly for household expenses and needs, mortgage and debt payments. Testimony of 4/15/97 by Plaintiff and Defendant.
Question
2. How did the Court determine that the Defendant will not likely ever own any real estate as a home?
Answer
The Court made that determination based on an overall assessment of the circumstances of the Defendant, his age, projected retirement date and remaining assets.
Question
3. On what basis did the Court determine that the Plaintiff has the ability to earn much?
Answer
The question is misleading and taken out of context.
The Court's statement was, "the Plaintiff has the ability to earn much more than she has in the recent past and is licensed to do so."
Plaintiff is licensed and the record supports the proposition that she is capable of earning more than in the CT Page 5252 past.
Question
4. On what basis did the trial court first state that the Plaintiff-Appellant works as a health aide and generally receives $8.00 per hour but later states that Plaintiff-Appellant's hourly charge to clients is at least $8.00?
Answer
On the basis of the testimony adduced at trial including the Plaintiff's testimony.
Question
5. What relevance did the Court place on the following findings:
a. In November 1974, Plaintiff's son, Sean Higgins, gave her $5,000.00.
b. In 1995, Plaintiff's son gave her another $5,000.00.
c. In 1991, Plaintiff's son, Sean Higgins, won the lottery in the amount of 4.7 million dollars.
d. Plaintiff's son gave her the 1994 Dodge Van shown on her affidavit.
e. Plaintiff's son gave her funds to assist in paying taxes.
Answer
The Court's findings as to the witness, Sean Higgins, merely recite the nature of his testimony during the trial.
The son's gifts were presumably motivated by love and affection for the parent and not the result of any legal obligation.
The Court did not rely on the son's gifts or circumstances in arriving at its decision.
Question
CT Page 5253
6. What was the basis for failing to award Plaintiff-Appellant any portion of Defendant-Appellee's pension?
Answer
The Court was endeavoring to balance the financial assets between the parties.
Question
7. What was the basis for awarding Plaintiff-Appellant alimony of $75.00 per week for two years?
Answer
The Court was endeavoring to balance the financial circumstances of the parties mindful of other orders of the Court, including the Court's position as to the real estate and the liquidation of the mortgage due to the Defendant's efforts.
Question
8. Did the Court consider the tax consequences of its alimony award?
Answer
Yes.
Question
9. Did the Court consider the validity of the deductions Defendant takes from his gross weekly pay check?
Answer
Yes. All deductions are tax related, federal and State, 401K, medical insurance and union dues. The 401K deduction is extremely modest.
Question
10. What was the basis of the Court's finding that Plaintiff-Appellant has the ability to earn much more than she has in the CT Page 5254 past?
Answer
An assessment of the testimony at trial on April 15, 1997 and April 16, 1997.
Question
11. What was the Court's basis in failing to provide security for the payment of alimony?
Answer
The Court saw no necessity to enter such an order. Defendant had complied with any prior temporary orders. There was no claim for any arrearage.
Question
12. What was the basis in failing to award Plaintiff-Appellant attorney's fees?
Answer
Plaintiff asked for attorney's fees in the amount of $4,000.00 in the Proposed Orders submitted to the Court.
The Defendant's financial affidavit under assets reflected:
No real estate.
A 1995 Mercury motor vehicle on which $7,000.00 was due.
Furnishings in Defendant's lodgings valued at $3,000.00.
Personal music valued at $5,000.00.
Norwich Savings Bank, $623.00.
The Rogers Bros. insurance had no cash value. CT Page 5255
The Court had awarded one-half of the 401K.
The Defendant's pension indicated "no lump sum disbursements available".
Defendant's net income was $523.51; weekly expenses, $545.59.
The foregoing was the Court's basis in not awarding attorney's fees.
The Court did not feel that Defendant's musical instruments or music needed to be liquidated, nor could the Court reasonably conject what might have been realized.
Austin, SJTR